**TEAMSTERS PUBLIC EMPLOYEES UNION LOCAL NO. 594 et al.,**
Plaintiffs,

v.

**CITY OF WEST POINT, NEBRASKA,**
et al., Defendants.

Civ. No. 72–0–108.

United States District Court,
D. Nebraska.

Feb. 10, 1972.

David D. Weinberg, Weinberg & Weinberg, Omaha, Neb., for plaintiffs.

William A. Harding, Nelson, Harding, Marchetti, Leonard & Tate, Lincoln, Neb., for defendants.

## MEMORANDUM AND ORDER

DIER, District Judge.

This matter comes before the Court upon the motion of the plaintiffs for preliminary injunction pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. Plaintiffs seek a preliminary injunction (1) restraining the defendants from discriminating against them because of their union membership, and (2) ordering defendants to rehire the plaintiff employees and restore them to their former employment with the defendant City.

The Court, after receiving testimony and other evidence and hearing oral arguments of counsel, believes that there is a very strong likelihood that plaintiffs, former employees of the City of West Point, Nebraska, were discharged from their employment with said City on December 28, 1971, solely for asserting their right to unionize. On the basis of the evidence thus far adduced, it appears that the individual defendants, City Councilmen of the City of West

Point, acted "under the color of state law" at all times relevant to the matters in issue.

██ The Court thus finds that there is a reasonable probability that the aforementioned defendants have, in violation of 42 U.S.C. § 1983, deprived the individual plaintiffs of the right of freedom of association as guaranteed to them by the First and Fourteenth Amendments to the United States Constitution. Thus, jurisdiction is acknowledged under 28 U.S.C. § 1343(3) (4), where union membership is protected by the right of association under the First Amendment, which right the States and their subdivisions must recognize pursuant to the Fourteenth Amendment. American Federation of State, County and Municipal Employees, AFL–CIO v. Woodward, 406 F.2d 137, 139 (8th Cir. 1969).

The Court does note, however, that had the proceedings in the present case not progressed as far as they now have, this would undoubtedly be a proper case for application of the exhaustion of remedies doctrine. In this regard, it is true that the Eighth Circuit Court of Appeals in *Woodward*, observed that the Nebraska judicial and administrative remedies were inadequate. That Court said:

"The court of industrial relations is one of limited powers. See, International Bro. of Elec. Wkrs., Local Union No. 507 v. City of Hastings, 179 Neb. 455, 138 N.W.2d 822 (1965). It is neither authorized to restrain public officials from discriminating against public employees because of union membership nor empowered to correct the results of such discrimination. The defendant does not contend that Nebraska state courts of general jurisdiction have or would exercise jurisdiction to protect the plaintiffs' rights under the Nebraska Constitution and Statutes to belong to a labor organization. Article XV, Sections 13, 14 and 15; Reissue Revised Statutes of 1943, § 48–217. Nor has the plaintiffs' statement that 'no Nebraska court or agency has ever ordered reinstatement and compensation of public employees discharged for joining a union or directed a public official to stop interfering with a union organizing campaign' been challenged. "The inadequacy of the administrative procedure for resolution of this dispute is obvious. Reissue Revised Statutes of 1943, § 48–836 specifically provides that a decision or report of an arbitration board as to a dispute submitted to it shall be advisory only and shall not be binding on either party. 406 F.2d at 141."

Subsequent to *Woodward*, the Nebraska statutes referred to by the Court of Appeals were amended. Specifically, Neb.Rev.Stat. § 48–836 was repealed, while § 48–819 was left within the statutory scheme. The latter statute provides:

"48–819. *Court; orders; effect.* Orders, temporary or final, entered by the Court of Industrial Relations shall be binding on all parties involved therein and shall be deemed to be of the same force and effect as like orders entered by a district court and shall be enforceable in appropriate proceedings in the courts of this state. Failure on the part of any person to obey any order, decree or judgment of the Court of Industrial Relations, either temporary or final, shall constitute a contempt of such tribunal in all cases where a similar failure to obey a similar order, decree or judgment of a district court would constitute a contempt of such tribunal, and upon application to the appropriate district court of the state shall be dealt with as would a similar contempt of the said district court."

Thus, it appears to this Court that the Nebraska Court of Industrial Relations has virtually as much power in regard to labor disputes as would a Nebraska district court. An industrial dispute is defined by Neb.Rev.Stat. § 48–801(7) as follows:

"(7) Industrial dispute shall include any controversy concerning terms,

tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment; * * * "

The present controversy would apparently fall within the aforesaid definition, thereby giving the Nebraska Court of Industrial Relations jurisdiction of the matter.

■ In addition, the Court would note that, if a dispute which falls within the jurisdiction of the Nebraska Court of Industrial Relations, involves a federal constitutional right, then either the Court of Industrial Relations must be deemed to have been granted sufficient power to as fully vindicate, preserve and protect said right as is possessed by a federal district court or a state court of general jurisdiction, or the statutory scheme creating the Court of Industrial Relations would be subject to immediate constitutional attack on the grounds that it does not pass the scrutiny of the federal constitution. In other words, if a federal constitutional right can be litigated before a state administrative tribunal but not protected to the extent that the federal constitution demands, then the extent of the right has been effectively reduced, watered down, or perhaps even quashed. This Court would express great doubt that any state has the power to reduce the measure of a federal constitutional right by state legislation. See Gilliam v. City of Omaha, 331 F.Supp. 4 (D.Neb.1971). See also Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

■ Thus, this Court in the future in this type of case would be prone toward application of the exhaustion of remedies doctrine at the outset. However, in view of the time and cost already expended in the present matter, it would be manifestly unjust to apply the doctrine in the instant matter. The Court will, therefore, proceed with a consideration of the propriety of issuing a preliminary injunction.

It cannot be gainsaid that: "A mandatory [preliminary] injunction of this nature, especially at the preliminary stage of proceedings, should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party." Miami Beach Federal Savings and Loan Ass'n v. Callander, 256 F.2d 410 (5th Cir. 1958). However, this case presents just such an instance, and the facts and law are clearly in favor of the moving party at this stage of the proceedings.

It should be noted that a preliminary injunction is designed to preserve the status quo and to prevent irreparable harm to any of the parties. In this regard, it should be pointed out that if plaintiffs ultimately prevail in this case, and it is concluded that they are entitled to recover compensatory damages, such damages will be greatly increased if the plaintiffs are not restored to their employment with the City. This, of course, would not benefit either plaintiffs or defendants.

■ The Court has thus concluded that plaintiffs are entitled to a mandatory preliminary injunction restoring them to their employment with the defendant City in the same status and seniority as they held prior to their dismissal from said City.

The Court will not, however, enter a ruling at this time upon the issue of damages. Such a ruling, upon the basis of this record, would be at this point premature.

As far as the issue of punitive damages is concerned, this Court would note at this point that it is doubtful that the plaintiffs have themselves been as fair as they should have been in this matter. The evidence adduced shows that the plaintiffs and the plaintiff union never notified the defendants as to which union did in fact represent the City employees until after the plaintiff employees had been discharged. Neither were the defendants notified of the identity of the official representative of the union. Since the plaintiffs were not as

open and as fair with the defendants as the plaintiffs should have been, it is doubtful that they are entitled to punitive damages in this case. The Court does not, however, decide this matter at this time.

The Court also has serious doubts as to whether the plaintiff union is a proper party to this matter.

Again, the Court wants to make it abundantly clear that it is deciding nothing whatsoever insofar as damages are concerned. The Court's statements, in regard to damages, are merely observations, tentatively drawn from the rather scant evidence thus far adduced on this issue. In short, the statements are nothing more than obiter dicta and are not binding upon anyone. Accordingly,

It is ordered that a mandatory preliminary injunction consistent with this Memorandum and Order should be entered herewith.